**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 13-cv-02212-WJM

JAMES BRYANT,

      Applicant,

v.

BOBBY BONNER, Warden, Kit Carson Corr. Center, and
JOHN SUTHERS, Attorney General for the State of Colorado,

      Respondents.

---

## ORDER ON APPLICATION FOR A WRIT OF HABEAS CORPUS

---

Applicant, James Bryant, has filed *pro se* an Application for a Writ of Habeas

Corpus Pursuant to 28 U.S.C. § 2254 challenging the validity of his criminal conviction

in the District Court of Mesa County, Colorado.  Respondents have filed an Answer

(ECF No. 18), and Applicant was allowed an opportunity to file a Reply.  Having

considered the same, along with the state court record, the Court will deny the

Application.

## I.  BACKGROUND

On August 25, 2005, Applicant was convicted by a jury of assault on a peace

officer, and distribution of a schedule II controlled substance, in El Paso County District

Court Case No. 03CR1282. (ECF No. 1, at 1-2).  Upon his adjudication as a habitual

criminal, Applicant was sentenced to an aggregate prison term of 48 years. (*Id.* at 2;

ECF No. 9-1, at 6).

The Colorado Court of Appeals affirmed Applicant's convictions on direct appeal in *People v. Bryant* (*Bryant I*), No. 05CA2084 (Colo. App. March 5, 2009) (unpublished decision).  (ECF No. 9-10).  The state appellate court summarized the relevant facts as follows:

> On March 21, 2003, Colorado Springs Police Officer Shive was on patrol with new Deputy District Attorney Denise Minish as a ride-along. While driving through an apartment complex parking lot, Officer Shive noticed a gold-colored vehicle, not in a legal parking spot, with three males inside, two in the front and one in the back. Officer Shive noticed that the engine was running, and that all the men were looking down and toward the center console of the vehicle. As Officer Shive drove past, one of the individuals noticed his marked police cruiser. All three individuals immediately sat up in their seats and followed Officer Shive's cruiser with their eyes.

> Officer Shive made a U-turn in the parking lot, pulled up behind the vehicle, and called police dispatch to report his location and the number of the vehicle's temporary license tag. Dispatch reported that no information existed regarding that particular temporary license. Officer Shive then stepped out of his cruiser. At this point, the two passengers stepped out of the vehicle and began walking hurriedly toward another vehicle. The driver, who was later identified as [Applicant], remained in the vehicle. Officer Shive called out to the two passengers, ordering them to come back. They responded that they were not going to do anything Officer Shive told them, got into another vehicle, and left the scene.

> Officer Shive did not pursue the two former passengers and continued toward the gold-colored vehicle. As he approached, he saw [Applicant] reach toward the center console. When Officer Shive arrived at the vehicle, he stood slightly behind the driver-side window and identified himself as a police officer. [Applicant], rather than turning to face Officer Shive, turned his back to him and again reached for the center console. Officer Shive instructed him not to reach for the center console. When [Applicant] turned around, Officer Shive asked him for his identification, registration, and insurance information. [Applicant] provided his registration and insurance, but said he had no identification.

> Officer Shive asked [Applicant] to step out of the vehicle and [Applicant]  complied. [Applicant] then tried to reach into his pocket. Officer Shive ordered him not to put his hand in his pocket and asked him to put his hands on the trunk of the vehicle. While conducting a pat-down search,

Officer Shive felt a cylindrical object about the diameter of a fifty-cent piece. [Applicant] said the cylindrical object was pepper spray.

When Officer Shive reached into [Applicant's] pocket to remove the pepper spray, he felt a baggie with a hard, rocky substance. When [Applicant] tried to prevent Officer Shive from taking items out of his pocket, Officer Shive wrestled him to the ground. [Applicant] got to his feet again, struck Officer Shive on the face, and ran toward the apartment complex.

[Applicant] was apprehended a few minutes later by Officers Wrede and Dahl. A red cell phone was found next to the area where Officer Shive wrestled [Applicant] to the ground. While Officers Wrede and Dahl were packaging the evidence seized at the scene, the cell phone rang a number of times. Officer Wrede answered each call and testified concerning the contents of the calls at trial. [Applicant] moved to suppress the evidence obtained during the stop, but the court denied the motion after a pretrial hearing.

(*Bryant I*, ECF No. 9-10, at 3-5).

Applicant's request for certiorari review was denied by the Colorado Supreme Court on November 9, 2009 (ECF No. 9-8), and by the United States Supreme Court on March 22, 2010.  (ECF No. 9-6).

On April 10, 2010, Applicant filed *pro se* a motion for post-conviction relief pursuant to Colo. R. Crim. P. 35(c), which was denied summarily by the state district court on April 29, 2010. (ECF No. 9-5).  The Colorado Court of Appeals affirmed in *People v. Bryant* (*Bryant II*), No. 10-CA1107 (Colo. App. June 21, 2012) (unpublished). (ECF No. 9-3).  Applicant filed a petition for rehearing, which was denied on November 1, 2012.  (ECF No. 9-2).  He did not file a petition for certiorari review with the Colorado Supreme Court.

Applicant initiated this action on August 16, 2013.  In a December 4, 2013 Order, the Court determined that Applicant presented the following claims in the Application,

which are the same claims that he raised in his opening brief to the Colorado Court of

Appeals in *Bryant II*:

> Claim One: Trial counsel was ineffective in failing to:
> a) conduct a sufficient investigation to discover that the officer who first spotted what looked like a drug transaction: (i) reported the wrong license tag number to dispatch; (ii) lied about his commendations; and, (iii) lied about the injury resulting from Applicant's assault, all of which would "most likely" have resulted in suppression of all evidence against him (ECF No. 1, at 12; 9-4, at 12-13);
>
> b) impeach the officer with inconsistent preliminary hearing testimony (*id.* at 13-14);
>
> c) challenge a juror for cause, and to use a peremptory strike against the juror (*id.* at 14-15);
>
> d) require Applicant's presence during a discussion about whether to replace a juror with an alternate (*id.* at 15-17);
>
> e) renew the motion to suppress during trial, based on trial evidence that purportedly supported suppression (*id.* at 17-18).
>
> f) move to suppress and object to evidence that officers answered calls to applicant's cell phone and spoke with people who were seeking to buy drugs (*id.* at 18-21);
>
> g) seek a jury trial on the habitual criminal counts (*id.* at 21-22);
>
> h) move for a proportionality review (*id.* at 22-24);
>
> i) ensure a proper trial court advisement on the right to testify (a requirement set out in *People v. Curtis*, 681 P.2d 504 (Colo. 1984)) (*id.* at 24-26); and,
>
> j) the cumulative effect of trial counsel's mistakes caused prejudice sufficient to warrant a new trial (*id.* at 26).
>
> Claim Two: Appellate counsel was constitutionally ineffective in failing to:
>
> a) challenge the absence of a jury determination of the habitual criminal counts (ECF No. 1, at 14; No. 9-4, at 27); and

b) appeal on the ground that one of the prior convictions used to enhance Applicant's sentence in this case was misnamed in the original information (it was amended prior to the habitual hearing) (*Id.*; No. 9-4, at 27-28).

On October 15, 2013, Magistrate Judge Boyd N. Boland ordered Respondents to file a pre-answer response addressing the affirmative defenses of timeliness and exhaustion of state court remedies.  In the pre-answer response, Respondents conceded that the Application was timely under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1).  (ECF No. 9, at 6-7).  Respondents argued, however, that Applicant failed to exhaust state remedies for his claims because he did not present them in a petition for certiorari review to the Colorado Court of Appeals.  In a December 4, 2013 Order, Senior U.S. District Judge  Lewis T. Babcock rejected the affirmative defense of failure to exhaust.  The Court addresses the merits of Applicant's claims below.

## II.  LEGAL STANDARDS

### A.  28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The applicant bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question the court must answer under § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1).  *See id.* at 1018.

If a clearly established rule of federal law is implicated, the court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409–10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 131 S.Ct. at 786 (internal quotation marks omitted). In conducting this analysis, the court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* Moreover, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

**B.  *Pro Se* Litigant**

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *Pro se* status does not entitle Applicant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## III.  ANALYSIS

**A.  Ineffective Assistance of Trial Counsel**

In his first claim, Applicant raises several allegations of ineffective assistance of trial counsel (IAC).  To prevail, Applicant must show that: (1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential.  *Id.*  at 689. Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted).  Under the AEDPA standard of review, "the question is not whether counsel's actions were reasonable.  The question is whether there is any

9

reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S.Ct. at 788.

Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693.  The likelihood of a different result must be substantial, not just conceivable.  *Id.*  The Court need not address both prongs of the *Strickland* inquiry if Applicant's claim fails on one.  *Id.*  at 697.

In Applicant's state post-conviction proceeding, the Colorado Court of Appeals applied the *Strickland* standard to each of his IAC claims.  (*Bryant II*, ECF No. 9-3, at 6-7).  The Court thus reviews the claims to determine if the state appellate court's determinations reasonably applied *Strickland.*

### 1. failure to conduct a sufficient investigation

In sub-claim 1(a), Applicant asserts that trial counsel was constitutionally ineffective in failing to conduct a sufficient investigation to discover that the officer who first spotted what looked like a drug transaction (i) reported the wrong license tag number to dispatch; (ii) lied about his commendations; and, (iii) lied about the injury resulting from Applicant's assault, all of which would "most likely" have resulted in suppression of all evidence against him (ECF No. 1, at 12; 9-4, at 12-13).

### a. sub-claim 1(a)(i)

The state appellate court rejected Applicant's contention in sub-claim 1(a)(i) on the following grounds:

1.  Temporary License Number

First, we are not persuaded that Bryant was prejudiced by his attorney's purported failure to discover that the officer did not provide the correct temporary license number to dispatch.

As noted above, the officer testified that he initiated the investigation because he believed a drug transaction was taking place.  The officer received no information from the number he transmitted, and Bryant has not indicated what the officer would have learned if he had conveyed the correct temporary license number.  Bryant does not claim that the officer deliberately provided the incorrect license number to dispatch.  We also note that, on direct appeal, Bryant argued that the State of Colorado did not record temporary license tag information in 2003.  *See Bryant I.*

Further, the division in *Bryant I* upheld the validity of the investigatory stop, finding that the stop was justified by the behavior of the men in the car and the totality of the circumstances.  The division did not refer to or rely upon the temporary license tag testimony in its analysis.

(*Bryant II*, ECF No. 9-3, at 7-8).

The Court finds that the Colorado Court of Appeals' determination comported with *Strickland.*  The state appellate court's decision in *Bryant I* upholding the trial court's conclusion that the investigatory stop was legal (*see* ECF No. 9-10, at 7-9) is supported by the evidence presented in the state court proceeding (State Court R., 6/15/05 Trial Tr., at 49-75), and has not been challenged by Applicant in his federal Application.  Because the Colorado Court of Appeals decided that the investigatory stop was justified based on facts other than the temporary license tag, Applicant has failed to show a reasonable likelihood of acquittal if counsel had discovered that the officer provided an incorrect temporary license number to dispatch.  Accordingly, Applicant cannot prevail on claim 1(a)(i).

**b.  sub-claims 1(a)(ii) and (iii)**

The state appellate court rejected Applicant's contentions in sub-claim 1(a)(ii)

and (iii) based on the following reasoning.

### 2.  Officer's Awards and Injuries

Next, we reject Bryant's argument that he was prejudiced by counsel's failure to investigate the officer's prior award history or his need for medical treatment.

Bryant's assertions that the officer lied about these matters is bare and unsupported by the record.  Further, a second individual testified about the officer's injuries at trial. The record also shows that counsel aggressively attacked the officer's credibility on other grounds.  Bryant fails to demonstrate how, given the overwhelming evidence against him, evidence that the officer had lied about his award history and his need for medical treatment would have affected the outcome of trial.

(*Id.* at 8-9).

The state appellate court's factual findings are presumed correct and are

supported by the state court record.  Applicant does not provide any factual support for

his allegation that Officer Shive lied when he testified about the awards he had received

for outstanding service.  Moreover, contrary to Applicant's assertions in his opening

brief to the Colorado Court of Appeals, Officer Shive did not testify that he received

medical treatment at a hospital for his injuries.  (*See* ECF No. 9-4, at 13).  Instead, the

officer stated that he went to the hospital to be "checked out" pursuant to police

department protocol, but did not receive any medical treatment for the bruising he

suffered as a result of Applicant punching him in the face.  (State Court R., 6/15/05 Trial

Tr., at 84-85).  The deputy district attorney present at the scene also testified about the

assault.  (*Id.*, 6/14/05 Trial Tr. (afternoon proceeding), at 38).  Furthermore, as the state

appellate court observed, defense counsel subjected Officer Shive to a grueling cross

examination, based, in part, on a petty offense misconduct conviction the officer

received in 2002 for making a false statement in an affidavit in support of a search warrant. (*Id.* at 112-172). In short, Applicant has failed to demonstrate that, even if Officer Shive did lie about the awards he received after his petty offense conviction, the additional impeachment evidence reasonably would have altered the outcome of Applicant's trial.

Finally, the Court recognizes that Applicant also argued in his opening brief to the Colorado Court of Appeals in *Bryant II* that trial counsel should have discovered that the money the police found in the vehicle belonged to his mother. Because Applicant exhausted his state court remedies, the allegation is entitled to review by this Court under the AEDPA standards.

The state appellate court rejected the IAC allegation because Applicant failed to "allege how such evidence would have affected his conviction, given the apparent drug transaction taking place when the officer first observed him, and the seizure of large quantities of cocaine and cash on his person." (*Bryant II*, ECF No. 9-3, at 9). The state court further observed that Applicant failed to explain why he did not provide this information to his attorney. (*Id.*). The state court's factual findings are presumed correct and are supported by the state court record. (State Court R., 6/14/05 Trial Tr. (afternoon proceedings), at 67-83; 6/15/05 Trial Tr., at 87, 93-96, 204). In light of the substantial evidence of guilt, Applicant has failed to demonstrate how any additional evidence concerning ownership of the money found in the vehicle would reasonably have resulted in an acquittal. The Court thus finds that the Colorado Court of Appeals' resolution of his claim was reasonable under *Strickland*.

Claim 1(a) will be dismissed in its entirety, including the allegation that trial counsel should have discovered that the money found in the vehicle belonged to Applicant's mother.

### 2. failure to impeach police officer's testimony

For sub-claim 1(b), Applicant contends that trial counsel was constitutionally ineffective in failing to impeach the officer with his inconsistent preliminary hearing testimony.  (ECF No. 1, at 12; No. 9-4, at 13-14).

The Colorado Court of Appeals addressed Applicant's argument as follows:

> Bryant also claims that the officer's testimony at trial contradicted his testimony at the preliminary hearing.  However, because his claim is vague and conclusory, the trial court properly rejected it on that basis.  *See Osorio*, 170 P.3d at 799.  Further, we note that a related argument about inconsistent testimony was addressed and rejected by a division of this court in *Bryant I*.  *Cf.* Crim. P. 35(c)(3)(VI) ("[t]he court shall deny any claim that was raised and resolved in a prior appeal or postconviction proceeding on behalf of the same defendant").

(*Bryant II*, ECF No. 9-3, at 9-10).

The Court finds that the state appellate court's resolution of Applicant's claim was consistent with *Strickland* because Applicant fails to explain what testimony by the officer at trial differed from the officer's trial testimony and how any asserted differences affected the jury's verdict.  Conclusory assertions are insufficient to support an ineffective assistance of counsel claim.  *See Cummings v. Sirmons*, 506 F.3d 1211, 1228-29, 33-34 (10th Cir. 2007) (allegations based on unsubstantiated assertions of fact are not sufficient to satisfy *Strickland*); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (ineffective assistance claim fails "where [petitioner's] allegations are merely conclusory in nature and without supporting factual averments").    Sub-claim 1(b) therefore will be dismissed.

### 3. failure to challenge a juror for cause

In sub-claim 1(c), Applicant asserts that trial counsel was constitutionally ineffective in failing to use a peremptory strike against a prospective juror. (ECF No. 1, at 12; No. 9-4; at 14-15).

The Colorado Court of Appeals rejected this claim on the following grounds:

> Bryant next asserts that his trial attorney rendered ineffective assistance during voir dire by failing to use a peremptory challenge or to challenge for cause a juror who was acquainted with the investigating officer. We are not persuaded.

> To protect a defendant's right to a fair and impartial jury, a court "must grant a challenge for cause if a prospective juror is unwilling or unable to accept the basic principles of criminal law and to render a fair and impartial verdict based upon the evidence admitted at trial and the court's instructions." [*Dunlap v. People*, 173 P.3d 1054, 1081 (Colo. 2007) . . .*see also* § 16-10-103(1)(j), C.R.S. 2011. . .]. However, "[i]f a potential juror's statements do not evince the sort of enmity or bias that warrants dismissal under [section] 16-10-103(1)(j). . . a trial court may deny a challenge for cause without further inquiry." *People v. Merrow*, 191 P.3d 319, 321 (Colo. App. 2007); . . . .

> Further, a defense counsel's failure to exercise a peremptory challenge does not give rise to a claim of ineffective assistance of counsel absent a showing that the defendant was prejudiced by the failure. *People v. Vieyra*, 160 P.3d 205, 209 (Colo. App. 2007)

> Here, Bryant maintains that one of the jurors had played hockey with the investigating officer and stated during voir dire that he would "only find [Bryant] not guilty if the defense could prove that . . . the investigating detective was lying."

> However, the above-quoted language does not appear in the transcript of the voir dire. Instead, the record shows the following colloquy between defense counsel and the juror:

> > [DEFENSE COUNSEL]: You also stated that you played hockey with Officer Shive?

> > [JUROR]: I do believe I did. His name sounds familiar to me. I know I played hockey with a Michael. I am not saying it is the same guy. I am not 100 [percent] sure.

[DEFENSE COUNSEL]: Do you recall any experiences?

[JUROR]: He is a good right winger.  That is it.  Nice guy in the locker room.  I had two police officers on my team, Michael and Kyle Sacks who was a goalie.  They were both nice fellows.

[DEFENSE COUNSEL]: Did you know anything personally about Mr. Shive?

[JUROR]: Not at all.

[DEFENSE COUNSEL]: If I were to show you that Mr. Shive was not, shall we day, the most honest person in the world and was able to prove that to you, would your relationship with him in the past, would that cause you to just glide over that?

[JUROR]: Not at all, if you were able to prove it, I would believe you.

Considered in the context of the entire voir dire, it appears that trial counsel was attempting to determine the extent of the juror's relationship with the officer and whether that relationship would impact the juror's ability to fairly judge the evidence.  We perceive nothing in the juror's response that indicates the juror would decline to follow the law, would misapply the presumption of innocence, or was biased in favor of the state.

(*Bryant II*, ECF No. 9-3, at 11-12).  The state appellate court further found that the trial court independently questioned the juror about his acquaintance with the officer and the juror stated unequivocally that he would not give the officer's testimony any greater credibility than another witness, and that he could be a fair and impartial juror in the case.  (*Id.* at 13).  Finally, the Colorado Court of Appeals noted that the juror did not express any bias or prejudice against Applicant in response to specific questions posed to the prospective jurors, and did not express any doubts or concerns about the presumption of innocence.  (*Id.* at 14)  The state appellate court concluded that

counsel's failure to request that the juror be excused did not constitute deficient performance under *Strickland.* (*Id.*).

The state court's factual findings are presumed correct, are supported by the state court record (*see generally* 6/15/15 Trial Tr. (morning proceeding)), and have not been rebutted by Applicant. The Court finds that the Colorado Court of Appeals' resolution of Applicant's claim did not run afoul of *Strickland* because there is no evidence of juror bias. *See Patton v. Yount,* 467 U.S. 1025, 1035 (1984) (to demonstrate juror bias, a defendant must show that the juror had such a fixed opinion that he or she could not judge impartially). Absent evidence of actual bias, Applicant could not have been prejudiced by trial counsel's failure to challenge the prospective juror for cause. *See Hale v. Gibson,* 227 F.3d 1298, 1319-22 (10th Cir. 2000) (rejecting ineffective-assistance-of-counsel claim because challenged jurors all said, either explicitly or implicitly, that they could "put aside their opinions and judge the case impartially on the evidence"; to demonstrate juror bias, an applicant must show more than the juror's "preconceived notion of guilt;" he must show that the juror "had such a fixed opinion that he or she could not judge impartially"). Sub-claim 1(c) will be dismissed.

### 4. failure to require Applicant's presence during a trial conference

For sub-claim 1(d), Applicant contends that trial counsel was ineffective in failing to request Applicant's presence during a discussion whether to replace a juror with an alternate. (ECF No. 1, at 12; No. 9-4, at 15-17).

The Colorado Court of Appeals resolved the claim as follows:

> Bryant next contends that his trial counsel was ineffective for waiving his presence when counsel and the court discussed whether to excuse a tardy juror. We disagree.

Due process requires a defendant's presence to the extent that a fair and just hearing would be thwarted by his or her absence. *Luu v. People*, 841 P.2d 271, 275 (Colo. 1992). Allegations of the denial of the right to be present at trial are scrutinized under the harmless error doctrine. *Id.* at 274.

Here, assuming without deciding, that Bryant had a constitutional right to be present, we conclude that he was not shown beyond a reasonable doubt that any error contributed to the verdict. *See People v. Grace*, 55 P.3d 165, 169 (Colo. App. 2001). The record does not support his assertion that the court "expressed great doubts about the [tardy] juror's reliability and capabilities." Bryant argues that he would have asked that the juror be replaced, but the prosecutor so asked and the court rejected the suggestion. Further, defense counsel was present and acquiesced in keeping the juror.

Thus, we agree with the People that Bryant has not shown that he was prejudiced by his counsel's waiver. [State case law citations omitted].

(*Bryant II*, ECF No. 9-3, at 14-15).

The state court record refutes any reasonable probability that Applicant's presence at the conference between the trial court and counsel would have changed the outcome of his trial. As discussed in *Bryant II*, the prosecution's request that the tardy juror be replaced with an alternate was denied. It is not likely that the trial court would have granted a similar request by Applicant. And, Applicant does not point to any evidence that the tardy juror who decided his guilt was actually biased against him, or that the alternate juror would not have convicted him, in light of the overwhelming evidence of guilt presented at trial. In short, Applicant fails to demonstrate how he was prejudiced by his absence from the court conference. The Court thus finds that the state appellate court's resolution of his claim was consistent with *Strickland*. Sub-claim 1(d) will be dismissed.

### 5.  failure to renew motion to suppress during trial

In sub-claim 1(e), Applicant asserts that trial counsel was ineffective in

failing to renew the motion to suppress during trial, based on trial evidence that

purportedly supported suppression (ECF No. 1, at 12; No. 9-4, at 17-18).

The Colorado Court of Appeals rejected this claim on the following grounds:

> Bryant next maintains that his counsel was ineffective for failing to move to suppress the investigating officer's trial testimony, and in failing to renew a motion to suppress evidence, in light of testimony which he claims contradicted the officer's testimony at a preliminary hearing.  We are not persuaded.
>
> Here, Bryant asserted that evidence at trial contradicted the officer's claim that his car was stopped in such a way that it impeded traffic.  Bryant also points to testimony that purportedly contradicts the officer's claim that he and the other men acted suspiciously.  He maintains that counsel failed to preserve the suppression issue for appeal.
>
> Because Bryant's contention that the contradictions in testimony should have resulted in reversal of the court's ruling on the suppression motion was rejected by a division of this court on direct appeal, we do not address it here.  *Bryant I*; *See* Crim. P. 35(c)(3)(VI).  Thus, we reject Bryant's assertion that his attorney's failure to renew the motion to suppress resulted in a loss of his right to make arguments on appeal.

(*Bryant II*, ECF No. 9-3, at 15-16).

In *Bryant I*, the Colorado Court of Appeals found no merit to the underlying bases

of Applicant's IAC claim because the inconsistencies in Officer Shive's testimony cited

by Applicant were "not supported by the record, were not brought to the district court's

attention, or were for the jury to resolve," (ECF No. 9-10, at 13), and, therefore, did not

require the district court *sua sponte* to reconsider its suppression ruling.  (*Id.*; *see also*

*id.*, at 10-12).

Defense counsel is not obliged to raise non-meritorious claims before the trial

court.  *See Cannon*, 383 F.3d at 1161-62 (where there is no basis under the

Constitution or under state law for objection to evidence, counsel cannot have been

ineffective for failing to raise it); *accord Ford v. Norris*, 364 F.3d 916, 919 (8th Cir. 2004)

(where state supreme court concluded that a state-law objection would have probably been unsuccessful, counsel cannot have been ineffective in failing to make it).

Further, the Court has carefully reviewed the alleged contradictions raised by Applicant in *Bryant I* (ECF No. 9-10, at 10-13), as well as the state hearing and trial transcripts, and finds that none of the asserted inconsistencies, either singularly or in toto, were sufficient to demonstrate a reasonable probability that the outcome of Applicant's trial would have been different had defense counsel renewed the motion to suppress at trial. The Court therefore finds that the state appellate court's resolution of Applicant's claim comported with *Strickland*. Sub-claim 1(e) will be dismissed.

### 6. failure to file a motion to suppress and to object to evidence

For sub-claim 1(f), Applicant contends that counsel was ineffective in failing to move to suppress and object to evidence that officers answered calls to Applicant's cell phone and spoke with people who were seeking to buy drugs. (ECF No. 1, at 12; No. 9-4, at 18-21).

The Colorado Court of Appeals rejected this claim based on the following reasoning:

> Bryant contends that his trial counsel provided ineffective assistance by failing to move to suppress evidence gathered when the officer answered telephone calls made to [Applicant's] cell phone. We are not persuaded.

> At trial, the district court overruled Bryant's prejudicial effect and foundation objections to the cell phone evidence. Bryant made no other objections to the evidence. *See Bryant I.*

> On direct appeal, a division of this court rejected Bryant's argument that the court should have barred the cell phone evidence on its own motion because it was gathered in violation of state eavesdropping and wiretapping statutes. The division concluded that the law in Colorado was unsettled, and thus any error could not have been "obvious" and could not rise to the level of plain error. *See Bryant I.*

Bryant now argues that his attorney was ineffective for failing to seek suppression of the evidence on the basis of state and federal eavesdropping and wiretapping statutes and the Fourth Amendment.  We agree with the People that any deficiency in counsel's failure to raise additional objections to the admission of the evidence was not prejudicial for two reasons.

First, the testimony concerning the cell phone calls was brief.  The officer who answered the calls testified that he understood the callers to be asking for some quantity of a narcotic, but admitted (1) there was scant evidence connecting Bryant to the phone, which he had found on the ground; (2) the callers did not ask for Bryant by name; (3) the callers did not specify exactly what they were trying to buy; (4) he did not know what quantity or type of narcotic they were asking for; and (5) he did not follow up on the information given by the callers or check with the phone company to determine if the phone actually belonged to Bryant.  Also, the cell phone calls were only briefly mentioned in closing arguments.

Further, the court here denied Bryant's ineffective assistance of counsel claims, in part, because the evidence against him was overwhelming, and we agree that the other evidence of his intent to sell was strong.  This evidence included his suspicious interactions with the passengers in his car, their flight, and the large amount of cocaine and cash recovered after his arrest.

Under these circumstances, we perceive no prejudice to Bryant from counsel's failure to raise the additional objections to the cell phone evidence.

(*Bryant II*, ECF No. 9-3, at 16-18).   The state appellate court's findings are presumed

correct, are supported by the state court record (*see* 6/15/05 Trial Tr., at 205-09, 212-

14), and have not been rebutted by Applicant.  Initially, the Court observes that defense

counsel did raise unsuccessful foundational and prejudice objections to the cell phone

evidence at trial, which were rejected by the state court.  (State Court R., 6/15/05 Trial

Tr., at 11-13, 109-10).  The trial court's ruling was affirmed on direct appeal in *Bryant I*.

(ECF No. 9-10, at 13).  Further, the evidence of Applicant's guilt was significant without

the officer's testimony about the cell phone calls.  As such, Applicant fails to

demonstrate a reasonable probability of acquittal had the cell phone evidence been

excluded.  The Court finds that the Colorado Court of Appeals reasonably applied the *Strickland* prejudice standard in rejecting Applicant's claim.  Sub-claim 1(f) will be dismissed.

### 7.  failure to seek a jury trial on the habitual criminal counts

In sub-claim 1(g), Applicant asserts that trial counsel was ineffective in failing to seek a jury trial on the habitual criminal counts.  (ECF No. 1, at 12; No. 9-4, at 21-22).

The state appellate court rejected this claim because the Colorado statute providing that habitual criminal charges be adjudicated by a judge, not a jury, has been upheld as constitutional.  (*Bryant II*, ECF No. 9-3, at 18-19 (citing *People v. Nunn*, 148 P.3d 222, 225 (Colo. App. 2006, relying on *Almendarez–Torres v. United States*, 523 U.S. 224 (1998) and §§ 18-1.3-803, C.R.S.).  As such, the court reasoned, defense counsel did not provide defective assistance.  (*Id.*).

In *Almendarez–Torres*, the United States Supreme Court held that prior felony convictions are sentence enhancements, not elements of an offense, and therefore need not be proved to a jury beyond a reasonable doubt. 523 U.S. at 239-47.  The holding in *Almendarez–Torres* has been affirmed in later Supreme Court decisions. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt") (emphasis added); *United States v. Booker*, 543 U.S. 220, 244 (2005) (reaffirming the recidivism exception announced in *Apprendi*).

The Court finds that the state appellate court's ruling was not contrary to or an unreasonable application of applicable Supreme Court cases.  Accordingly, Applicant is not entitled to federal habeas relief for sub-claim 1(g).

### 8.  failure to request a proportionality review

For sub-claim 1(h), Applicant contends that counsel was ineffective in failing to move for a proportionality review.  (ECF No. 1, at 12; No. 9-4, at 22-24).

"The Eighth Amendment contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (citing and quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring in part and concurring in the judgment)); see also *Hawkins v. Hargett*, 200 F.3d 1279, 1282 (10th Cir. 1999) (recognizing that Justice Kennedy's opinion in *Harmelin* sets forth the applicable Eighth Amendment proportionality test.").  A sentence violates the Eighth Amendment if it is "'grossly disproportionate' to the crime."  *Ewing*, 538 U.S. at 23 (quoting Justice Kennedy's concurrence in *Harmelin*, 501 U.S. at 1001); *see also Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) ("[O]ne governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years.").

In analyzing Applicant's claim, the Colorado Court of Appeals recognized that the constitutional prohibition against cruel and unusual punishment prohibits only those sentences that are "grossly disproportionate" to the crime.  (*Bryant II*, ECF No. 9-3, at 19).  The state appellate court assessed Applicant's forty-eight year sentence to determine whether "the gravity or seriousness of the triggering crime together with the gravity or seriousness of the underlying crimes" to determine whether they are "so

lacking in gravity or seriousness as to suggest that the sentence is grossly

disproportionate." (*Id.* at 20).  The state court then engaged in the following analysis:

> Here, the triggering offense for which Bryant received the forty-eight year sentence was possession of a schedule II controlled substance with intent to distribute, which is grave and serious for purposes of proportionality review and, thus, requires only an abbreviated proportionality review. [State case law citations omitted].

> Thus, we consider the second subpart of the abbreviated proportionality review, the severity of the punishment. [State case law citation omitted].  We note that Bryant's forty-eight-year-sentence was the required sentence established by the legislature.  *See* §§ 18-1.3-401(a)(V)(A), (10)(A), (b)(XI), 18-1-3-801(1.5), C.R.S. 2011 (sentencing for a class three extraordinary risk crime is a presumptive maximum of sixteen years, and two habitual criminal counts require imposition of three times the maximum of the presumptive range).

> To determine whether the offenses which form the basis of a habitual criminal sentence are grave or serious, the trial court should assess the offenses in terms of the harm caused or threatened to the victim or society. [State case law citation omitted].

> Here, Bryant's prior offenses include felony convictions related to possession and distribution of marijuana.  Such crimes can be grave or serious. [State case law citation omitted]. Even if we were to assume that these underlying convictions, standing alone, did not rise to the level of grave or serious offenses, we conclude that in combination with the seriousness of the distribution of cocaine conviction at issue here, the offenses in question are sufficiently grave and serious that no inference of gross disproportionality is raised by imposition of the statutorily mandated forty-eight-year sentence. [State case law citation omitted].

> Further, we note the jury found, by special interrogatory, the existence of extraordinary aggravating circumstances: (1) Bryant was on probation for two other felonies; and, (2) he was on bond for two previous felonies.

> Giving the necessary deference to the legislatively established sentences, we conclude that, taken in combination, the underlying offenses and the triggering offense are not so lacking in gravity or seriousness as to suggest that Bryant's sentence of forty-eight years is grossly disproportionate.  Therefore, we reject Bryant's contention that he was prejudiced by his counsel's failure to pursue a proportionality review.

(*Id.* at 21-23).

The Colorado Court of Appeals conducted a proportionality review and concluded that Applicant's 48-year habitual offender sentence was not grossly disproportionate to his crimes. The state appellate court's conclusion was consistent with Supreme Court case law. *See Rummel v. Estelle*, 445 U.S. 263, 265-66, 275-76 (1980) (concluding that sentence of life imprisonment with possibility of parole imposed under state recidivist statute did not violate Eighth Amendment, where defendant had two previous felony convictions—one for "fraudulent use of a credit card to obtain $80 in goods or services" and another for "passing a forged check in the amount of $28.36" –and was then convicted of felony theft for "obtaining $120.75 by false pretenses"); *Hutto v. Davis*, 454 U.S. 370 (1982) (upholding against a proportionality attack a sentence of 40 years' imprisonment for possession with intent to distribute nine ounces of marijuana); *Harmelin*, 501 U.S. 957, 994 (1991) (plurality opinion holding that sentence of life imprisonment without parole for first-time offender's possession of 672 grams of cocaine did not violate the Eighth Amendment); *Ewing,* 538 U.S. at 30–31 (upholding against a proportionality attack a twenty-five year to life sentence imposed under a California recidivist statute for the offense of felony grand theft (i.e., stealing three golf clubs worth approximately $1,200); *Lockyer*, 538 U.S. at 77 (upholding on federal habeas review the state appellate court's determination that two consecutive twenty-five-year to life sentences imposed under a state recidivist statute for two counts of petty theft did not violate clearly established Supreme Court Eighth Amendment jurisprudence).

The Court finds that the Colorado Court of Appeals' decision comported with *Strickland.* Applicant has failed to demonstrate a reasonable probability that he would have received a more lenient sentence if defense counsel had requested a proportionality review. Sub-claim 1(f) lacks merit and will be dismissed.

**9.  failure to ensure a proper advisement on the right to testify**

In sub-claim 1(i), Applicant asserts that trial counsel was ineffective in failing to

ensure that Applicant received a proper trial court advisement on the right to testify (a

requirement set out in *People v. Curtis*, 681 P.2d 504 (Colo. 1984)[1]).  (ECF No. 1, at 12;

ECF No. 9-4, at 24-26).

The right of a criminal defendant to testify in his own defense is fundamental, *see*

*Rock v. Arkansas*, 483 U.S. 44, 51 (1987), such that its waiver must be knowing,

intelligent and made by the defendant personally.  *See Jones v. Barnes*, 463 U.S. 745,

751 (1983).

The Colorado Court of Appeals found no merit to Applicant's claim based on the

following:

> Here, the court advised Bryant that if he testified, the prosecutor
> would be allowed to ask him about his felony convictions in front of the
> jury.  The court also advised him that, if he had any felony convictions, his
> prior convictions could "only be considered as to whether or not [he was]
> telling the truth."  Bryant stated that he understood the court's advisement.
>
> Although Bryant now claims the advisement on the consequences
> of testifying was incomplete, the record shows that . . . the court advised
> Bryant that evidence of his prior felonies could be considered by the jury
> only on the issue of credibility. [State case law citations omitted].
>
> Further, Bryant now admits that he understood that his felony
> convictions could be used to impeach his credibility.  Specifically, he
> maintains that he understood the trial court's advisement to mean that "the
> jury would be advised that it could only consider his prior marijuana
> convictions regarding whether he was telling the truth[,], and not as a
> means of determining that it was more likely than not that he committed

---

[1]In *People v. Curtis*, the Colorado Supreme Court held that if a criminal defendant wishes to waive
his constitutional right to testify, a trial court must–on the record and out of the presence of the jury–advise
the defendant of his right and obtain a knowing, intelligent and voluntary waiver. 681 P.2d at 514-15.

the instant offenses." Given this admission, an evidentiary hearing is unnecessary to determine Bryant's understanding of the court's advisement. [State case law citation omitted]. Although Bryant characterizes this as a misunderstanding, he does not specify what the misunderstanding was. [State case law citation omitted].

We note that there is no allegation that Bryant conveyed any purported confusion to the court or defense counsel. The record also does not support Bryant's claim that defense counsel advised the court that he and Bryant "only briefly" discussed the right to testify. As noted, the record demonstrates a valid waiver by Bryant of his right to testify.

Thus, because we reject Bryant's assertion that the *Curtis* advisement was constitutionally deficient, his allegation does not support a claim of ineffective assistance of counsel.

(*Bryant II*, ECF No. 9-3, at 24-26).

Applicant does not point to any clear and convincing evidence to refute the state court's factual findings that he received an adequate advisement concerning his constitutional right to testify. The Court has reviewed the trial transcript and finds that the state appellate court's resolution of Applicant's claim was reasonable in light of the colloquy between the trial judge and Applicant, which reflects that Applicant knowingly, intelligently and personally waived his right to testify. Applicant thus cannot prevail on sub-claim 1(i).

### 10. cumulative error

For sub-claim 1(j), Applicant contends that the cumulative effect of trial counsel's mistakes caused prejudice sufficient to warrant a new trial. (ECF No. 1, at 12; No. 9-4, at 26).

Cumulative error is present when the "cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *Duckett v. Mullin*, 306 F.3d 982, 992 (10th Cir. 2002) (quoting *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir.1990) (en banc)). "A

cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of trial is such that collectively they can no longer be determined to be harmless." *Id.* (quoting *Rivera*, 900 F.2d at 1470).   On federal habeas review, a cumulative error analysis applies only to cumulative constitutional errors. *Young v. Sirmons*, 551 F.3d 942, 972 (10th Cir. 2008).

There is a split in the Circuit Courts of Appeal as to whether the need to conduct a cumulative-error analysis is clearly established federal law under § 2254(d)(1).   See *Hooks v. Workman*, 689 F.3d 1148, 1194 n.24 (10th Cir. 2012).   The Tenth Circuit has indicated, however, that in the context of ineffective-assistance claims, "for AEDPA purposes, the cumulative-error inquiry is clearly established federal law.   *Id.*; *see also Littlejohn v. Trammell*, 704 F.3d 817, 869 (10th Cir. 2013) (recognizing that "[a]lthough we have never expressly held . . . that cumulative-error analysis is clearly established federal law, we have long conducted cumulative-error analyses in our review of federal habeas claims.") (collecting cases).   This Court need not resolve the issue because under the deferential AEDPA standard of review, Applicant is not entitled to relief.

The state appellate court resolved Applicant's claim as follows: "Here, it is not apparent that there was any error, and the few we have assumed for argument's sake were clearly harmless. Thus, there was not cumulative error."   (*Bryant II*, ECF No. 9-3, at 27).   In other words, for those IAC claims where the Colorado Court of Appeals assumed deficient performance by counsel, the state court nonetheless found that Applicant was not prejudiced by counsel's errors.

The Colorado Court of Appeals' determination of Applicant's cumulative error claim did not run afoul of *Strickland*.   The state court's findings that each of Applicant's

IAC claims lacked merit means that there can be no cumulative prejudice. *See Jackson v. Shanks*, 143 F.3d 1313, 1321 (10th Cir. 1998) (where none of the alleged evidentiary errors had merit, the cumulative effect of counsel's failure to raise them on appeal failed to accumulate to *Strickland* prejudice). Sub-claim 1(j) will be dismissed.

## B. Claim Two

For his second claim, Applicant asserts that appellate counsel was constitutionally ineffective in failing to raise certain issues on direct appeal of his conviction. This claim is governed by the *Strickland* standard. *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003); *Hannon v. Maschner*, 845 F.2d 1553, 1558 (10th Cir. 1988). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones*, 463 U.S. at 751-53.).

### 1. absence of a jury determination of the habitual criminal counts

Applicant contends in sub-claim 2(a), that direct appeal counsel was ineffective in failing to challenge the absence of a jury determination of the habitual criminal counts. (ECF No. 1, at 14; No. 9-4, at 27).

The Colorado Court of Appeals, applying Supreme Court standards (*see* ECF No. 9-3, at 27), concluded that the claim lacked merit based on its rejection of Applicant's claim of ineffective assistance of trial counsel that raised the same allegation. (*Bryant II*, ECF No. 9-3, at 28).

Because Applicant was not entitled to a jury determination on the habitual criminal counts, as discussed in Section III.A.7, *supra*, counsel's failure to raise the issue on direct appeal was not deficient or prejudicial. *See Jackson*, 153 F.3d at 1321

("Absent counsel's omission of an obvious winner on appeal, we are not inclined to second-guess appellate counsel's decision to eliminate arguable but weak claims," citing *United States v. Cook*, 45 F.3d 388, 394-95 (10th Cir. 1995)).  Accordingly, sub-claim 2(a) will be dismissed.

### 2.  misnaming of habitual criminal count in the original information

Applicant maintains in sub-claim 2(b) that appellate counsel was ineffective in failing to raise an argument that the trial court erred in permitting the prosecution to amend the Information to correctly name one of the prior convictions used to enhance his sentence.  (*Id.*; No. 9-3, at 27-28).

The state appellate court addressed the claim as follows:

> Bryant next claims that appellate counsel was ineffective for failing to challenge the trial court's ruling permitting amendment to the information concerning on of his prior convictions.  We are not persuaded.

> A court may permit an information to be amended as to form or substance at any time prior to trial.  *See* Crim. P. 7(e); *People v. Al-Yousif*, 206 P.3d 824, 830 (Colo. App. 2006).  A court may also permit an information to be amended as to form at any time before the verdict or finding if no additional or different offense is charged, and if the substantial rights of the defendant are not prejudiced.  *See* Crim. P. 7(e).  To determine whether an amendment is one of form or substance, the court must evaluate the count as alleged in the information, as well as the circumstances surrounding the case. [State case law citation omitted].

> The decision to allow amendment pursuant to Crim. P. 7(e) is committed to the discretion of the trial court, and thus we will not overturn the court's ruling absent an abuse of discretion.  *Al-Yousif*, 206 P.3d at 830.  Crim. P. 7(e) is to be construed liberally in order to avoid the dismissal of cases for technical irregularities in an information that can be cured through amendment.  [State case law citation omitted].

> As initially charged, count one alleged Bryant committed possession of a controlled substance with intent to distribute.  The count also charged that Bryant was a repeat offender, making his crime a class 2 felony.  Count four alleged habitual criminality as a result of a previous conviction for distribution of a schedule II controlled substance.

The People moved for amendment of the information during the trial of the substantive offenses but prior to the habitual trial.  Counts one and four were amended to reflect that Bryant had not previously been convicted of possession of a schedule II controlled substance, but rather, had been convicted of possession of marijuana with intent to distribute.  The amendment reduced the substantive crime of possession with intent to distribute from a class 2 to a class 3 felony.  The felony described in the habitual count changed from a class 3 felony to a class 4 felony.

Bryant objected on the ground that the amendment would represent a substantive change.  The trial court rejected the argument, finding that the amendment was one of form, not substance.  The court also found that, given the identifying information provided, Bryant had sufficient notice of the allegations against him.  Further, the court found that the change was to Bryant's benefit, as it reduced the felony classifications.

To the extent Bryant adequately raised this issue in his motion, on appeal he argues only that he was prejudiced because, without the change, the prosecution would not have been able to prove his habitual criminality.  However, he does not challenge the court's finding that he had sufficient notice of the charges against him, and the amendments did not cause him to be charged with a new or different offense.  We also agree with the People that, because Bryant's habitual criminality was determined in a separate trial following conclusion of his trial on the substantive offenses, even a substantive amendment of the habitual criminal count prior to that trial would have been permitted under the rule.  Finally, we conclude that the court correctly classified the amendments as being of form, not substance.

We conclude that the trial court did not abuse its discretion by allowing the prosecution to amend the complaint.  Thus, Bryant has suffered no prejudice from his appellate counsel's failure to raise the issue on direct appeal.

(*Bryant II*, ECF No. 9-3, at 28-31).

The Colorado Court of Appeals addressed and rejected the merits of Applicant's underlying claim that the trial court erred in permitting the prosecution to amend the Information.  The state court's finding are reasonable in light of the evidence before the trial court.  (*See* State Court R., 6/15/05 Trial Tr., at 219-230; Court File, at 5, 67, 71).  Because the underlying basis of Applicant's IAC's claim lacks merit, the state appellate court's conclusion that Applicant was not prejudiced by counsel's failure to raise the

issue on direct appeal was a reasonable application of *Strickland*. *See Jackson*, 143

F.3d at 1321.  Sub-claim 2(b) will be dismissed.

## IV.  ORDERS

For the reasons discussed above, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2254 (ECF No. 1), filed by James Bryant, on August 16, 2013, is DENIED and

this action is DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that no certificate of appealability shall issue because

Applicant has not made a substantial showing of the denial of a constitutional right. 28

U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*,

529 U.S. 473, 483–85 (2000).  It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is

denied.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this

order would not be taken in good faith  *See Coppedge v. United States*, 369 U.S. 438

(1962).  If Applicant files a notice of appeal he must also pay the full $505  appellate

filing fee or file a motion to proceed *in forma pauperis* in the United States Court of

Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Dated this 6th day of May, 2014.

BY THE COURT:

_____
William J. Martínez
United States District Judge